IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | |
|---|---|
| CYNTHIA LEMLEY * | |
| * | |
| Plaintiff * | |
| * | |
| V. * | |
| * | NO: 4:10CV01153  SWW |
| METROPOLITAN LIFE INSURANCE * | |
| COMPANY and AMERICAN * | |
| NATIONAL RED CROSS LONG- * | |
| TERM DISABILITY PLAN * | |
| * | |
| Defendants * | |
| * | |

**ORDER**

Plaintiff Cynthia Lemley ("Lemley") brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), **29 U.S.C. § 1001** *et seq.*, against Metropolitan Life Insurance Company ("MetLife") and the American Red Cross Long Term Disability Plan ("LTD Plan"), a welfare benefit plan governed by ERISA. Lemley seeks reversal of MetLife's decision denying her claim for LTD benefits. Now before the Court is Lemley's motion for summary judgment (docket entries #12, #13, #14) and Defendants' response in opposition (docket entries #17, #18). After careful consideration, and for reasons that follow, MetLife's decision to deny Lemley's claim for LTD benefits will be affirmed, and the motion for summary judgment will be denied.

**I.  Background**

Lemley began working for the American Red Cross ("Red Cross") in April 2004. Lemley's initial term of employment with the Red Cross ended in 2005 due to budgetary issues,

but the organization rehired her on March 18, 2008.  According to Lemley, Red Cross management rehired her with full knowledge that she was under a doctor's care for multiple sclerosis ("MS") and fatigue.

February 16, 2009 marked Lemley's last day of work at the Red Cross.  By letter dated February 17, 2009, Dr. Lee Archer stated that Lemley was under his care for MS and was disabled for severe fatigue.  Dr. Archer's letter concludes: "She has been put on bed rest starting today,  February 17, 2009 through March 13, 2009[,] and at that time will be evaluated and examined for further recommendations."  (AR, MET-L-0344.)  Subsequently, Dr. Archer determined the Lemley would need to remain off work until June 1, 2009.

On February 25, 2009, Lemley submitted a claim for short-term disability ("STD") benefits.  (AR-MET-L-0863, 0376.)  MetLife, which served as the claims administrator for the Red Cross STD benefit plan, initially granted Lemley's claim.   Subsequently, MetLife terminated Lemley's STD benefits based on a lack of medical documentation showing that she was unable to perform her job.  Lemley appealed, and MetLife eventually reinstated her STD benefits for the maximum time period available under the STD benefit plan.   (AR-MET-L-0837.)

In correspondence dated June 20, 2009, Lemley's attorney indicated that she intended to pursue a claim for LTD benefits.  (AR-MET-L-1182-1183.)  MetLife, the claims administrator for the LTD Plan, provided Lemley claim forms and requested additional medical information.  By letter to Lemley's attorney dated October 9, 2009, a MetLife Senior LTD claims specialist notified Lemley that her claim was denied because her disabling condition was considered a pre-existing condition under the LTD Plan.  (AR-MET-L-0821–0822.)

Lemley appealed, arguing that she was exempt from the pre-existing condition provision based on her past participation in Red Cross disability plans and because Red Cross management waived the pre-existing condition provision at the time of her rehire.  In support of her appeal, Lemley submitted an affidavit in which she testified that Candace Casey ("Casey"), the person in charge of the Red Cross Little Rock office, told her that immediately upon her re-employment, she would be eligible to participate in the organization's LTD Plan.  (AR-MET-L-0141-0412.)

By letter dated April 23, 2010, MetLife notified Lemley that the original determination denying her claim was upheld because her disability resulted from a pre-existing condition.

Regarding pre-existing conditions, the LTD Plan provides:

> We will not pay benefits for a Disability that results from a Pre-existing Condition, if You have been Actively at Work for less than 12 consecutive months after the date Your Disability insurance takes effect under this certificate.

(AR, MET-L-0045).  The Plan further provides that "a Pre-existing Condition means a Sickness or accidental injury for which You:

- received medical treatment, consultation, care, or services;
- took prescription medication or had medications prescribed; or
- had symptoms or conditions that would cause a reasonably prudent person to seek diagnosis, care or treatment;

in the 3 months before Your Insurance under this certificate takes effect."  (AR, MET-L-0045).

According to the foregoing provisions, claims for disability benefits under the LTD Plan will be denied if (1) the claimant receives medical treatment, consultation, care or services for a sickness within three months before her insurance takes effect and (2) the claimant has worked less than 12 consecutive months before submitting a claim for LTD benefits.  Here, it is

undisputed that Lemley's insurance took effect on April 1, 2008[1] and that she received medical treatment for MS in February and March 2008, within the three-month period before her insurance took effect.[2]  It is also undisputed that Lemley ceased working on February 16, 2009, less than 12 months after her insurance took effect.

## II.  Standard of Review

ERISA provides that an employee may bring a civil action to recover benefits due to her under the terms of an employee welfare benefit plan.  *See* **29 U.S.C. § 1132(a)(1)(B)**. Although Congress has not specified the scope of judicial review for claims brought under § 1132, in *Firestone Tire and Rubber Co. v. Bruch*, **109 S. Ct. 948 (1989)**, the Supreme Court held that a denial of benefits challenged under ERISA is subject to *de novo* review unless the terms of the benefit plan give the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.  *See Firestone Tire and Rubber Co. v. Bruch*, **109 S. Ct. 948, 956 (1989)**.  When a plan confers such discretionary authority, the administrator or fiduciary's decision is given deference and reviewed under an abuse of

---

[1] The Plan provides: "If you enter an eligible class after January 1, 2008, You will be eligible for insurance on the first day of the month following the date You enter that class." (AR-MET-L-0030).  The Red Cross rehired Lemley on March 18, 2008, and as stated in the October 9, 2008 letter denying her claim for LTD benefits, her effective date of coverage was April 1, 2008. (AR-MET-L-0821-0822.)

[2] The letter denying Lemley's claim sets forth information contained in her medical records, which document that she received an injection of Tysabri on February 25, 2008 at the University of Arkansas Medical Chemotherapy Infusion Center.  (AR, MET-L-0894).  Other records reflect that on March 4, 2008, Lemley visited Dr. Archer for follow-up related to MS (AR-MET-L-0884), and on March 14, 20008, she saw Dr. Archer "for follow-up of her problems with multiple sclerosis and recently an intractable migraine headache."  (AR-MET-L-0890, 0888).

discretion standard, unless factors exist that mandate application of a less deferential standard. *See Woo v. Deluxe Corp*., 144 F.3d 1157, 1060-61 (8th Cir. 1998).

In this case, the LTD Plan gives the claims administrator, MetLife, "discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan." (AR-MET-L-0062.)  Lemley asserts that pursuant to *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 S. Ct. 2343, (2008), MetLife's dual role as the administrator and payer of benefits should be taken into consideration. The Court agrees that MetLife's dual role is one factor to be considered in determining whether there is an abuse of discretion.  *See Glenn*, 554 U.S. at 115, 128 S. Ct. at 2350 (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948 (1989) (additional quotation and citation omitted)).

In evaluating MetLife's denial of benefits under the abuse-of-discretion standard, the Court must determine whether the decision was reasonable--that is, supported by substantial evidence. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Fletcher-Merrit v. NorAm Energy Corp.,* 250 F.3d 1174, 1179 (8th Cir.2001)(internal quotations omitted).

### III.  Discussion

Lemley asserts four grounds for reversal.  First, she urges the Court to reverse MetLife's decision under a theory of promissory estoppel.  The affidavit that Lemley presented in support of her administrative appeal states that Red Cross managers knew about her medical problems, and they informed her that she would be immediately eligible for participation in the STD and LTD disability plans upon her re-employment.  Lemley testifies: "I was led to believe that

based on my prior service with the organization that I would immediately be eligible for the long-term disability benefits without being subjected to another pre-existing condition waiting period. (AR-MET-L-0414.)

Under Eighth Circuit precedent, "equitable estoppel may not be used to vary or contradict the language of an ERISA plan or to enlarge the benefits available under the plan." *Regency Hosp. Co. of Northwest Ark., LLC v. Arkansas Blue Cross Blue Shield,* No. 4:08CV04177 GTE, 2009 WL 5174246, *6 (E.D. Ark., Dec. 21, 2009)(citing *Algren v. Pirelli Armstrong Tire Corp.*, 197 F.3d 915 (8th Cir.1999) and *Slice v. Sons of Norway*, 34 F.3d 630 (8th Cir. 1994)). Lemley cannot recover on the basis of a representation by Red Cross management that deviates from the LTD Plan terms unless that representation was a plausible interpretation of an ambiguous plan provision. Here, the LTD Plan unambiguously precludes disability benefits for a disability arising from a pre-existing condition, and it provides a clear definition for the term " pre-existing condition."

Even assuming that equitable estoppel applies, Lemley fails to state an actionable claim. She does not claim that Casey or other Red Cross managers acted with apparent authority when they represented that the pre-existing condition provision would be waived; nor does she allege any facts indicating that she reasonably relied on management's representation. *See Antolik v. Saks, Inc.*, 463 F.3d 796, 802 (8th Cir.2006)(finding no actionable misrepresentation by the employer and "no reasonable detrimental reliance by ... employees who continued to work without confirming exactly what severance benefits were available ....").

Second, Lemley argues that she was exempt from the pre-existing condition provision based on her prior participation in a disability plan. The LTD Plan reads in pertinent part as

6

follows:

**SPECIAL RULES FOR GROUPS PREVIOUSLY INSURED UNDER A PLAN OF DISABILITY INCOME INSURANCE**

> To prevent a loss of insurance *because of a change in insurance carriers*, the following rules will apply *if this Disability Income Insurance replaces a plan of group disability income insurance provided to You by the Policyholder*:
>
> **Prior Plan** means the plan of group disability income insurance provided to You by the Policyholder through another carrier on the date before the Replacement Date.
>
> **Replacement Date** means the effective date of the Disability Income Insurance under the Group Policy.
>
> * * * * *
>
> **Rules for Pre-existing Conditions**
>
> In determining whether a Disability is due to a Pre-Existing Condition, We will credit You for any time You were insured under the Prior Plan. If Your Disability is due to a Pre-existing condition as described in this certificate, but would not have been due to a pre-existing condition under the Prior Plan, We will pay a benefit equal to the lesser of . . . .

(AR-MET-L-0033 (italics added).)

The foregoing "special rule" for pre-existing conditions provides continuity of coverage for existing plan participants when an employer changes insurance carriers. The record is void of evidence that Lemley was a plan participant the day before she was rehired or that the Red Cross changed insurance carriers. The provision simply does not apply to the present controversy.

Third, Lemley argues it was arbitrary and capricious for MetLife to grant her claim for STD benefits and then deny her claim for LTD benefits. The Court finds no authority for the proposition that a decision to grant benefits under a STD benefits plan requires payment of LTD benefits available under a separate plan with separate eligibility requirements.

Fourth, Lemley claims that MetLife's application of the pre-existing conditions provision amounts to a breach of fiduciary duty because MetLife failed to consider Red Cross management's promise that she would be immediately eligible for LTD benefits upon her re-employment. Lemley does not allege that MetLife misled her to believe that the pre-existing conditions provision did not apply to her, nor does she allege any conduct on MetLife's part that constitutes a breach of a fiduciary duty.

In sum, the Court finds that MetLife's decision to deny Lemley's claim for LTD benefits is supported by substantial evidence. Furthermore, the Court finds no evidence that MetLife's dual role as an evaluator and payer of benefits influenced its decision to deny benefits.

## IV.  Conclusion

For the reasons stated, Plaintiff's motion for summary judgment (docket entry #12) is DENIED. Consistent with the judgment entered together with this order, the decision to deny Plaintiff's claim for long-term disability benefits is upheld, and this case is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED THIS 31ST DAY OF MAY, 2011.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE